UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHELLY SANDERSON,

                      Plaintiff,              11-CV-6096T

          v.                                  **DECISION**
                                              **and ORDER**
NEW YORK STATE ELECTRIC AND GAS
CORPORATION,

                      Defendant,
_____

## INTRODUCTION

Plaintiff Shelly Sanderson, ("Sanderson" or "Plaintiff") brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), (codified at 42 U.S.C. § 2000(e), et seq.) and the New York State Human Rights Law against her former employer New York State Electric and Gas Corporation, ("NYSEG" or "Defendant") claiming that she was discriminated against based upon her sex, that she was subject to a hostile work environment based upon sex, and that she was retaliated against for complaining of discrimination based upon sex.

Defendant denies Plaintiff's allegations and seeks to amend its Answer to the Complaint to include the following affirmative defenses: (1) Sanderson's claim is time-barred by the statute of limitations and (2) Sanderson's claim is barred by the doctrine of collateral estoppel. Plaintiff opposes Defendant's motion to amend on grounds that such an amendment would be futile.

Further, Defendant moves for summary judgment dismissing Plaintiff's Complaint on grounds that Plaintiff has failed to state a prima facie case of retaliation. Defendant asserts that Sanderson cannot establish any evidence of circumstances that give rise to an inference of discrimination or unlawful retaliation.

For the reasons set forth below, I grant in-part and deny in-part Defendant's motion to amend the Answer, however, I grant Defendant's motion for summary judgment and dismiss Plaintiff's Complaint in its entirety.

## BACKGROUND

The following facts are set forth in the Defendant's Statement of Undisputed Material Facts submitted pursuant to Rule 56(a) of the Local Rules of Civil Procedure. See Docket No. 19-2. This Court specifically notes Plaintiff's lack of dispute with the vast majority of the material facts as set forth by the Defendant. See Docket No. 27-1.[1] Of all the material facts cited herein, none were disputed by Plaintiff.

Plaintiff Shelly Sanderson was a full-time employee of NYSEG working, most recently, as a gas-fitter in Geneva, New York. Plaintiff, in her Complaint, claims that she was subjected to sex discrimination in the workplace through the creation of a hostile work environment and through disparate treatment. She also claims

---

[1]Of 145 material facts submitted by the Defendant, Plaintiff contests only 7.

that she was retaliated against when NYSEG terminated her employment on November 3, 2009.

Plaintiff claims that she was sexually harassed because NYSEG did not initially provide her with women's size jeans. Plaintiff also claims that it was discriminatory that she did not have her own separate locker room, other than a partitioned off area within the men's locker room. Additionally, Plaintiff interpreted as sexual harassment that NYSEG did not provide her a bathroom on the job site, whereas the men urinated on the job. Plaintiff claims that sometimes she would not be extended a hand to help her out of a construction hole, except from a select few of her co-workers. She claims that she was not told that there was a 60-pound jackhammer as opposed to the regular 90-pound one. Plaintiff also interpreted comments and snickering made by co-employees in the employee break room as sexual harassment.

Before her termination, Sanderson had been employed by NYSEG since 2000 and had worked as gas-fitter since 2002. In 2002, when a gas-fitter apprentice position was available in Geneva, Plaintiff, along with other employees, bid on that job. The job came with a significant pay increase for Plaintiff, and she viewed it as more stable. The job as a gas-fitter was awarded to Sanderson on the basis of seniority. The job as a gas-fitter included a three year training and apprenticeship program that was comprised of classroom training and on-the-job training which

Sanderson completed with no difficulty.  In fact, she excelled, passing every skills test on her first try.

Plaintiff testified that before she started the apprenticeship, she knew that the job as a gas-fitter was a field position, that there wasn't a bathroom on the job sites, and she would be required to be at a job site in the field for a period of time. Deposition Transcript of Shelly Sanderson (hereinafter "Sanderson Dep.") at 19, 93-94.

Plaintiff testified that a co-employee of NYSEG also wanted the gas-fitter job, and this caused a "difficult situation," because he was more senior than she in terms of employment with NYSEG but not in terms of time located in the Geneva location Sanderson Dep. at 31-32.  Sanderson testified that one of the other gas-fitters told her that she was "taking the job from a deserving man" who needed to "take care of his family." Sanderson Dep. at 29. Plaintiff also testified that Erv Schroeder ("Schroeder"), another gas-fitter, asked her if she "didn't want a nice clerk job upstairs." Sanderson Dep. at 43.  Although Plaintiff was aware that NYSEG had an anti-sexual harassment policy in place, Sanderson did not complain to Human Resources about the comments, nor did she talk to her union about the situation. Sanderson Dep. at 35, 39.

In 2004, Plaintiff had a dating relationship and a physical relationship with Schroeder that lasted for more than a year.  He was married at the time, and Plaintiff claims that when she tried

to end the relationship, he would not let it go. Plaintiff testified that he became very "controlling" and started "stalking" her outside of work. Sanderson Dep. at 50. Plaintiff then filed charges against Schroeder, and he was arrested for harassment. After she filed charges against Schroeder, the other gas-fitters rallied around him. Plaintiff testified that she assumed they supported him because he was a male Sanderson Dep. at 55. In November 2004 and February 2006, Sanderson got Orders of Protection against Schroeder, but neither extended to their place of employment. Prior to receiving the orders of protection, Sanderson did not report Schroeder's conduct. She did not feel that it affected her job. Sanderson Dep. at 65.

Sanderson later complained to her supervisors about the situation by describing how uncomfortable it was for her. Plaintiff testified that she told her supervisors that she "certainly wouldn't be able to work with him." Sanderson Dep. at 57. One of her supervisors attempted to neutralize the situation by keeping the two apart. Sometimes Schroeder worked within her vicinity, but when this happened, Sanderson had no interaction with Schroeder. On one occasion, Schroeder and Sanderson were assigned to the same crew. Sanderson complained about the situation and left the job site. NYSEG then assigned Schroeder to a different location than Sanderson in 2004.

In 2006, Plaintiff started working on the evening shift to respond to gas emergency calls. When she was on the evening shift, her work day only briefly overlapped with the hours of the day shift workers. Other than a minor disciplinary matter concerning her use of Company vehicles, Sanderson worked without incident, and her appraisals were always positive. While she was on the evening shift, Plaintiff began home schooling her child in September of 2009.

Also in September 2009, Plaintiff's supervisor informed her that starting on October 5, she would be needed for a temporary change in shift back to the day shift. Because Sanderson was a "scheduled worker," NYSEG could temporarily change Sanderson's hours if she was given sufficient notice. Sanderson Dep. at 123. Sanderson did not file a grievance regarding the change. In fact, she testified at her deposition that she did not disagree with the Defendant's stated reason that it needed more laborers on the day shift. Sanderson Dep. at 124.

However, Plaintiff pleaded with her supervisor not to change her to the day shift, because she wanted to continue home schooling her child. Sanderson Dep. at 124. She also testified that she told her supervisor's supervisor that she did not want to change shifts because she wanted to home school her child. Sanderson Dep. at 125. She also reported to her Union President that she did not want to

go to the day shift because she was home schooling her child. Sanderson Dep. at 130.

Plaintiff now claims, in a sworn affidavit, that after expressing some concerns she had about her working conditions on the day shift, she suffered a panic attack on October 2, 2009. Nonetheless, Sanderson reported to the day shift on October 5, 2009. She worked five days without incident. On October 12, Plaintiff reported that she would not return to work because she was "having stress issues and not feeling capable of coming to work." Sanderson Dep. at 128. That same day, Plaintiff was seen by a nurse practitioner in her physician's office, who recommended that she not go back to work for two weeks. On October 23, Plaintiff faxed to NYSEG another note from her doctor's nurse practitioner advising her to take another two weeks off.

Shortly thereafter, the NYSEG human resources department received a note from Plaintiff's physician indicating that Sanderson was physically able to perform her job, but not at NYSEG at the time.[2] Plaintiff was called by her employer NYSEG and instructed to return to work. When she failed to return to work, the human resources department at NYSEG scheduled a meeting with Sanderson to take place on November 3, 2009. The meeting included

---

[2]Jorge Saavedra, the HR representative of NYSEG testified at his deposition, in reference to a form filled out by Sanderson's doctor, "I believe this document to state that Ms. Sanderson was physically able to do her job just not at NYSEG at that time." Deposition Transcript of Jorge Saavedra at 35.

Plaintiff, members of the human resources department, Plaintiff's supervisor, and the president and another representative from Plaintiff's union.

At the meeting, Plaintiff was given specific instructions that she was to return to work the next day. In response to this direction, she reported that she was not going to return to work and that she would be out for another two weeks. Sanderson Dep. at 143. Plaintiff was then fired for insubordination.

During the meeting, Plaintiff stated that sexual harassment in the workplace was the reason why she was having stress and unable to return to the day shift. Before mentioning her claim of sexual harassment at the meeting, she testified that the main reason she could not return to the day shift was that she was home schooling her child. Sanderson Dep. at 151. NYSEG responded that it would investigate her allegations of sexual harassment.

Following her claim of sexual harassment, Charis Zembeck ("Zembeck"), the Lead Advisor of Labor Relations for NYSEG, reviewed documents regarding Sanderson's claims and conducted interviews with Sanderson, her Union representatives, her supervisors, and her co-workers. Zembeck ultimately found that there was no evidence to support any of the harassment allegations that Sanderson had raised.

In response to Sanderson's complaint about not having a separate female locker room, Zembeck noted that Sanderson's locker

room had a separate entrance from the men's locker room and that her lockers were partitioned off with a backboard that was seven feet tall and went all the way to the floor. There were no cracks in between the lockers, and there was no room to see under the lockers. Zembeck also noted that a private women's restroom was located ten or fifteen feet down the hall. Additionally, it was not required that the gas-fitters change clothes at work. Some, but not all of the employees did change clothes at work.

With respect to her complaint about the lighter jackhammer, Plaintiff testified at her deposition that although she had a three-year apprenticeship to learn on the job, she never knew there was a lighter jackhammer. She testified that "they didn't let her know" that there was a lighter jackhammer, she "never asked." Sanderson Dep. at 45-47. Plaintiff testified that although there were times that both the 60 pound and 90 pound jackhammers were on the same truck, "she never caught on" as to the weight difference. Sanderson Dep. at 48.

With respect to her uniform, initially, Sanderson was provided with the same jeans as her male co-workers. The uniforms came from a contractor, but when she asked for a more suitable uniform, NYSEG was able to provide her with gear more suitable to her. Sanderson Dep. at 74. Sanderson never complained to Human Resources about the uniform situation, and she never filed a grievance about the

uniform with her Union.  She testified that she had not given it a thought. Sanderson Dep. at 77.

Sanderson first complained to Human Resources about the men urinating at the same job site in October or November of 2009 but she never reported the situation to her union.  Sanderson did complain to her supervisor during her apprenticeship about the on-the-job bathroom situation, and he responded by giving her permission to use a vehicle on site at break time to drive to the bathroom.  Sanderson wanted NYSEG to provide an extra vehicle on site for the sole purpose of her use to drive it to the bathroom whenever she needed. Sanderson Dep. at 105.  Sanderson also testified that none of the men on the job site were allowed to take a vehicle to use the restroom whenever they needed. Sanderson Dep. at 105.

Sanderson also complained that before she went on the night shift, male employees in the break room made comments about Sanderson not reporting to work on time.  Sanderson testified that although she tried to get to work on time, she was sometimes late, and the comments about tardiness all seemed gender oriented directed to her because she was the only female present. Sanderson Dep. at 110-11.  Sanderson also testified that the men joked and teased each other, as well. Sanderson Dep. at 114.  She also complained of snickering and under-the-breath comments made by male co-employees at different times when she came into the crew room,

but she did not complain about specifics, nor could she confirm that the comments were directed at her. Sanderson Dep. at 120, 126-27. Sanderson also testified that she did not report or complain of any incidents of sexual harassment that occurred during the week she worked the day shift in October 2009. Sanderson Dep. at 127, 148-49.

Sanderson's union grieved her termination and arranged for an arbitration which Sanderson refused to attend. Nonetheless, on November 19, 2009, NYSEG offered Plaintiff her job if she were to return. She was offered a single-worker position, where she would not have to work in a crew with other employees. The position would have been on days for a finite amount of time. Sanderson received a letter from the human resources department stating that NYSEG would rescind her discharge if she returned to work on November 23, 2009. Sanderson did not report to work on November 23. She testified that she felt that the trust between her and NYSEG was gone and that she was still not medically able to return to work. Sanderson Dep. at 157, 159. Plaintiff testified that although NYSEG had offered to put her in a single-worker position to the best of its ability, she did not trust that it would follow-through on its offer. Sanderson Dep. at 161.

Plaintiff filed a Charge of Discrimination against her employer NYSEG with the Equal Employment Opportunity Commission on February 17, 2010. On February 18, 2011, the Commission issued

Plaintiff a right-to-sue letter.  Plaintiff filed the instant Complaint on February 28, 2011.  Defendant served its Answer on March 23, 2011.

**DISCUSSION**

I.  <u>Defendant's Motion to Amend</u>

Defendant moves to amend its Answer to assert two additional affirmative defenses: 1) that the statute of limitations had expired with regard to Sanderson's claims and 2) Sanderson's claims are barred by the doctrine of collateral estoppel.  Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend an answer "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  Courts will generally allow amendments to pleadings where the amendment will not prejudice the opposing party.  <u>See</u>, <u>Rachman Bag Co. v. Liberty Mutual Ins. Co.,</u> 46 F.3d 230, 234 (2d Cir. 1995).  However, leave to amend a pleading may be denied where the claim sought to be added is without merit or futile.  <u>Fiske v. Church of St. Mary of the Angels</u>, 802 F.Supp. 872, 877 (W.D.N.Y. 1992).  An amendment is "futile" if it would not survive a motion to dismiss pursuant to rule 12(b)(6).  <u>Pierce v. P & A Admin. Servs.</u>, 2010 WL 3369608 (W.D.N.Y. August 21, 2010)(citing <u>Lucente v. Int'l Bus. Machines Corp.,</u> 310 F.3d 243, 258 (2d Cir. 2002)).  Plaintiff claims that allowing both of these defenses would be futile.

A. <u>Statute of Limitations</u>

Claims brought pursuant to Title VII are subject to a strict limitations period. Specifically, a plaintiff must bring claims of discrimination to the EEOC within 300 days of the allegedly discriminatory act or acts. 42 U.S.C. § 2000e-5(e)(1). In the instant case, plaintiff filed her EEOC complaint on February 17, 2010. As a result, only those acts occurring on or after April 23, 2009 are timely for purposes of plaintiff's Title VII claims.

Plaintiff contends that her allegations of discrimination occurring prior to April 23, 2009 may be considered by the court because they form part of a continuing pattern of discrimination. Under this "continuing violation" theory of liability:

> if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.

<u>Lambert v. Genesee Hospital</u>, 10 F.3d 46, 53 (2d Cir. 1993), <u>cert. denied</u>, 511 U.S. 1052 (citations omitted). Separate and discrete discriminatory acts, however, do not constitute a continuing violation where they do not "[involve] specific discriminatory policies or mechanisms such as discriminatory seniority lists... or discriminatory employment tests..." <u>Id</u>. Accordingly, the mere allegation of a series of discrete actions without an allegation that the actions were part of a policy or mechanism of

discrimination, is insufficient to establish that a continuing violation of Title VII rights has occurred. Rather, Lambert requires that a "specific discriminatory policy" be shown which amounts to more than a string of allegedly discriminatory acts committed with one motive in mind. Id. Accordingly, allegations of multiple instances of unlawful conduct, even if similar, do not, by themselves implicate the doctrine. Id. Moreover, the "continuing violation" doctrine is strongly disfavored by courts in this Circuit. Lee v. Saltzman, 2011 WL 5979162 at * 5 (W.D.N.Y., November 27, 2011).

In the instant case, Plaintiff has merely alleged a series of discrete acts that are not part of a corporate policy or mechanism of discrimination, and thus, Plaintiff's allegations of discrimination by various employees occurring prior to April 23, 2009 are not timely under the Title VII statute of limitations.

Although claims brought under the New York Human Rights Law are analytically identical to claims brought under Title VII. Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708 (Cir. 1996), See Haywood v. Heritage Christian Home, Inc., 977 F.Supp. 611, 613 (W.D.N.Y. 1997), the statute of limitations for claims brought pursuant to the New York State Human Rights Law is different than the statute of limitations for claims brought under Title VII. Under the New York Human Rights Law, the limitations period runs for three years from the date on which an action asserting Human

Rights Law violations is filed.  N.Y.C.P.L.R. § 214(2) (McKinney's 2008); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir., 1998) ("[Plaintiff's] cause of action under New York's Human Rights Law is governed by a three-year statute of limitations, measured from the filing of the action in court.").  The three-year limitations period, however, is tolled "for the period between the filing of an EEOC charge and the issuance by the EEOC of a right-to-sue letter."  DeNigris v. New York City Health and Hospitals Corp., 861 F.Supp.2d 185, 192 (S.D.N.Y. 2012)(citing Wilson v. New York City Police Dept., 2011 WL 1215735 at *4 (S.D.N.Y. Mar.25, 2011)).

In the instant case, Plaintiff's administrative complaint was filed with the EEOC on February 17, 2010, and according to the Complaint, a right-to-sue letter was issued by the EEOC on February 18, 2011.  Accordingly, the limitations period in this action is tolled by one year and one day–the period during which Plaintiff's administrative complaint was pending before the EEOC. The Complaint in this case was filed on February 28, 2011.  As a result, the three-year statute of limitations, with the addition of the one year and one day tolling period renders claims made on or after February 27, 2007, timely for purposes of state Human Rights Law claims.

Sanderson has not alleged any discriminatory conduct or sexual harassment after she went on the evening shift in 2006, other than

what she claims was snickering and under-the-breath comments by her co-workers. Therefore, I find that it would not be futile to allow the Defendant to plead the affirmative defense of the statute of limitations. Accordingly, I grant Defendant's motion to amend its Answer to include the affirmative defense of the statute of limitations.

B. <u>Collateral Estoppel</u>

The plaintiff claims that the findings of the Workers Compensation Board that plaintiff was unable to work because of a work-related stress has the preclusive effect of determining her Title VII or her Human Rights Law claims of sexual harassment.

It is well settled that collateral estoppel may be applied to decisions of administrative agencies sitting in a "quasi-judicial" capacity. However, collateral estoppel will apply only where "giving a preclusive effect to the administrative proceeding <u>would not be unfair or unexpected</u>." <u>Taylor v Brentwood Union Free School District</u>, 908 F.Supp. 1165, 1178 (E.D.N.Y. 1995)(emphasis added)(<u>citing Long island Lighting Co. v. Imo Industries Inc.</u>, 6 F.3d 876, 885-86, (2nd Cir., 1993). With respect to Sanderson's claims under Title VII, however, there is no question that the Workers' Compensation Board determination has no preclusive effect on her claims. <u>United States v. Elliot</u>, 478 U.S. 788, 798-99 (1986)("Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims." ) <u>See</u>

<u>also</u> <u>Kremer v. Chemical Constr. Corp.</u>, 456 U.S. 461 (1982)(holding that unreviewed administrative determinations by state agencies do not preclude de novo consideration of subsequent Title VII actions" <u>Id</u>. at 470 n. 7).

With respect to Sanderson's state law claims, "Under New York law, collateral estoppel gives conclusive effect to an administrative agency's determination where: (1) the issue sought to be precluded is identical to a material issue necessarily decided by the administrative agency; and (2) there was a full and fair opportunity to contest the issue. <u>Rahman v. Museum of Natural History, City-of New York</u>, 2012 WL 1077679 at *8 (E.D.N.Y., March 30, 2012)(<u>Jeffreys v. Griffin</u>, 1 N.Y.3d 34, 769 N.Y.S.2d 184, 801 N.E.2d 404, 407 (N.Y.2003) . Here, the material issue necessarily decided by the Workers' Compensation Board was whether or not Sanderson suffered a mental injury compensable under the Workers' Compensation Law. Accordingly, although the Board considered evidence of sexual harassment, and found the evidence of sexual harassment to be lacking, the issue necessarily decided by the Board was not whether sexual harassment occurred, but whether a mental stress injury occurred. It is this finding of the Board, that no mental stress injury occurred, that is entitled to preclusive effect with respect to Plaintiff's current Human Rights Law Claims. Because the issue of whether or not Plaintiff suffered sexual harassment during the relevant periods for which she can

make a claim of discrimination claim under New York law was not completely and necessarily decided by the Workers' Compensation Board, the findings of the Board are not entitled to preclusive effect on that issue. <u>Sloth v. Constellation Brands, Inc.</u>, 2013 WL 623502 (W.D.N.Y. Feb. 19, 2013); <u>See</u> <u>e.g.</u> <u>Ragusa v United Parcel Service</u>, 2008 WL 612729 at *6 (S.D.N.Y., March 3, 2008)(declining to preclude plaintiff's New York State discrimination claims based on prior Workers' Compensation Board findings where plaintiff did not have full and fair opportunity to litigate claims before the Workers' Compensation Board).

Accordingly, I find that the findings of the Workers' Compensation Board have no preclusive effect with respect to Plaintiff's Title VII claims or her state law claims, and therefore, allowing Defendant to amend its Answer to include an affirmative defense of collateral estoppel would be futile. I therefore deny Defendant's motion to amend the Answer to include the affirmative defense of collateral estoppel.

II. <u>Defendant's Motion for Summary Judgment</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." When considering a motion for summary judgment, all genuinely disputed

facts must be resolved in favor of the party against whom summary judgment is sought.  Scott v. Harris, 550 U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate.  Scott, 550 U.S. at 380 (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)).

III. Plaintiff has failed to establish a Prima Facie Case of
         Gender Discrimination

As stated above, I find that the statute of limitations for Title VII precludes bringing claims of discrimination for alleged discriminatory acts that happened more than 300 days before filing a charge with the Equal Employment Opportunity Commission.  I therefore consider only those alleged acts that occurred on or after April 23, 2009 in determining whether or not plaintiff has stated a claim of gender discrimination under Title VII.  As for Plaintiff's state Human Rights Law claims, as stated above, the statute of limitations precludes bringing claims of discrimination for allegedly discriminatory acts that happened more than 3 years before filing the Complaint.  Therefore, for Plaintiff's state law claims, after taking into effect a tolling period, I consider only those alleged discriminatory acts that occurred on or after February 27, 2007.

To establish a prima facie case of unlawful employment discrimination based on gender under Title VII, a plaintiff must establish that he is a member of a protected class, was qualified for the position he held, was subjected to an adverse employment action, and that the adverse action occurred under circumstances giving rise to an inference of discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Here, because Sanderson was a member of a protected class, was qualified for her position, and was terminated from her job, she must raise an inference of discrimination by showing that she was treated less favorably than male employees who were similarly situated. See Grant v. Bethlehem Steel Corp., 635 F.2d 1007, 1013-14 (2d. Cir. 1980).

Sanderson fails to produce any evidence to support a rational finding that she was being discriminated against because of her gender, and without evidence, her own subjective opinions or beliefs are insufficient to survive summary judgment. Moll v. Telescator Res. Group, Inc., 2012 WL 1935087 at *25 (W.D.N.Y. May 29, 2012).

IV.   Plaintiff has failed to establish a Prima Facie Case of a Hostile Work Environment

Plaintiff alleges that there is a genuine question of fact as to whether a "reasonable person" could find Plaintiff's workplace

as a hostile work environment.[3]  I find as a matter of law that Plaintiff has failed to establish a prima facie case of a hostile work environment based upon sex.

As stated above, I find that the statute of limitations for Title VII precludes bringing claims of discrimination for allegedly discriminatory acts that happened more than 300 days before filing a charge with the Equal Employment Opportunity Commission.  I therefore consider only those alleged acts that occurred on or after April 23, 2009 in determining whether or not plaintiff has stated a claim of gender discrimination under Title VII.  As for Plaintiff's state Human Rights Law claims, as stated above, the statute of limitations precludes bringing claims of discrimination for allegedly discriminatory acts that happened more than 3 years before filing the Complaint.  Therefore, for Plaintiff's state law claims, after taking into effect a tolling period, I consider only

---

[3]This Court notes that Sanderson begins her argument in her Response in Opposition to Defendant's Motion for Summary Judgment by quoting from and citing to 42 U.S.C. § 1983.  Plaintiff, however, has not asserted a claim under § 1983 in this action. Moreover, Section 1983 prohibits persons acting under color of state law from depriving any citizen of rights guaranteed under the United States Constitution.  While the defendant concededly bears the words "New York State" in its corporate title, there is no allegation, or even suggestion, that the defendant, a private corporation, was at anytime, or in anyway, acting under color of state law.  Plaintiff also claims in her response that she brought claims of unlawful discrimination and retaliation pursuant to 42 U.S.C. § 1981.  42 U.S.C. § 1981, however, prohibits discrimination based upon a plaintiff's race.  As Sanderson has not made any factual averments regarding her race, or that she suffered any racial discrimination, 42 U.S.C. § 1981 is not applicable here.

those alleged discriminatory acts that occurred on or after February 27, 2007.

To state a claim of discrimination based on a hostile work environment, a plaintiff must establish the existence of a workplace that is "permeated with discriminatory intimidation, ridicule and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment." Torres v. Pisano, 116 F.3d 625, 630 631 (2d Cir.1997) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "Conduct that is merely offensive and not severe or pervasive enough to create an objectively hostile or abusive work environment" will not establish a Title VII discrimination claim.  Torres, 116 F.3d at 631 (2d Cir.) (internal quotes omitted); Gallagher v. Delaney, 139 F.3d 338, 346 (2d Cir.1998) ("A reasonable person would have to find the environment hostile or abusive, and the victim must have subjectively so perceived it.").  Conduct that "detract[s] from employees' job performance, discourage[s] employees from remaining on the job, or keep[s] them from advancing in their careers" may be actionable under Title VII. Harris, 510 U.S. at 21.

Here, Sanderson has not claimed a single incident within the limitations period of inappropriate comments related to her gender. Nor has she presented any evidence of inappropriate touching, nor that she was threatened by anyone.  Sanderson also testified that she had no difficulty performing her work, was able to perform

every required skill, and received good job performance appraisals. There is no evidence that the conduct she complains of altered her working conditions.

With respect, to Sanderson's claims that there was snickering in the work room presumably about her during her week on the day shift in October 2009, the law is clear that sporadic objectionable or inappropriate comments and behavior will not rise to the extreme level of behavior necessary to support a hostile work environment. Hannah v. One Communs., 2011 WL 5282633 at *7 (W.D.N.Y. September 28, 2011)(citing Petrosino v. Bell Atl., 385 F.3d 210, 223 (2d Cir.2004)). Accordingly, I find that Sanderson has failed to establish a prima facie case of gender based hostile work environment.

V.    Plaintiff has failed to establish a Prima Facie Case of Retaliation

Plaintiff claims that she was retaliated against by the Defendant for complaining of gender discrimination. She claims that only after she complained of a hostile work environment based on sex, she was terminated from her job.

To state a claim for retaliation, a plaintiff must establish: (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff or action that would dissuade a reasonable worker from making or supporting a charge of discrimination; and (3) a causal connection between the protected activity and adverse action. Burlington Northern & Santa

Fe Railway Co. V. White, 548 U.S. 53, 68 (2006); Holt v. KMI-Continental, 95 F.3d 123, 130 (2d Cir. 1996), cert. denied, 1997 WL 71191 (May 19, 1997); Tomka v. Seiler Corp., 66 F.3d 1295, 1308 (2nd Cir. 1995) (citations omitted).  Should the plaintiff state a claim for retaliation, the defendant may then articulate a non-discriminatory, legitimate reason for taking the action complained of, and then the burden shifts to the plaintiff to show that the employer's articulated reason is both untrue and a pretext for the true retaliatory motive. Id.

It is undisputed that Sanderson participated in a protected activity when she complained in the November 3, 2009 meeting of discrimination based upon her sex.  It is also undisputed that being fired from her job was an employment action that disadvantaged her or was an action that would dissuade a reasonable worker from making or supporting a charge of discrimination.

Plaintiff claims that the short amount of time between her making a complaint of discrimination and her termination is sufficient in itself to establish a temporal causal connection between the two events as required to state a prima facie case. However, I find as a matter of law that Sanderson has failed to show a causal connection between the protected activity of complaining about discrimination and the adverse employment action of having her employment terminated.

While the termination of Plaintiff's employment certainly constitutes an adverse employment action, there is no evidence in the record to suggest that it was in any way related to Plaintiff's engaging in protected activity. There is no evidence that NYSEG considered Plaintiff's gender, or participation in any protected activity in finding that Plaintiff's employment should be terminated. Accordingly, I find that Plaintiff has failed to establish that the firing took place in response to, or was motivated by Plaintiff's engaging in protected activity.

Defendant has also offered clear, uncontroverted evidence that Plaintiff was fired because she was insubordinate and refused to return to work. On multiple occasions, Sanderson was given warnings to return to work, and she continually refused to return. Furthermore, she informed NYSEG at the meeting on November 3, that she was not going to comply with a verbal order to return to work the next day, and accordingly, she was fired. Nonetheless, Sanderson was later offered her job back with an assurance from NYSEG to accommodate her requests to the best of its ability. She again refused the offer to return to work. She refused to return to work the following day and was terminated for insubordination.

Once a defendant in a retaliation claim has articulated a legitimate, non-retaliatory reason for the adverse action, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse

employment action." <u>Bundschuh v. Inn on the Lake Hudson Hotels, LLC</u>, 2012 WL 5402303 at *8 (W.D.N.Y. November 5, 2012).

Plaintiff has failed to rebut the Defendant's reasons for taking an adverse employment action against her, and she has failed to establish that retaliation was a pretext for the employment actions taken against her. Therefore, I conclude that Plaintiff has failed to raise any inference that the reasons for termination given by NYSEG were pretextual, or that she was retaliated against for exercising her rights.

Accordingly, I find that Sanderson's claims of retaliation are without merit as a matter of law.

III. <u>State Law Claims</u>

Claims brought under the New York Human Rights Law are analytically identical to claims brought under Title VII. <u>Van Zant v. KLM Royal Dutch Airlines</u>, 80 F.3d 708 (2nd Cir. 1996). <u>See Haywood v. Heritage Christian Home, Inc.</u>, 977 F.Supp. 611, 613 (W.D.N.Y. 1997)(Noting that both claims are governed by <u>McDonnell Douglas</u> standard). Therefore, I find that even when including any alleged discriminatory acts that would fit within the state law limitations period but not the Title VII limitations period, the analysis of the validity of Plaintiff's Title VII claims, as included <u>supra</u>, is still identical for Plaintiff's state law claims here. Accordingly, I hereby grant Defendant's motion to dismiss

Plaintiff's state law retaliatory discrimination claims under the New York Human Rights Law.

## CONCLUSION

For the reasons set forth above, I hereby grant Defendant's motion to amend its Answer to include the defense of statute of limitations.  However, I deny Defendant's motion to amend its Answer to include the defense of collateral estoppel. And finally, I grant Defendant's motion for summary judgment and dismiss Plaintiff's Complaint in its entirety with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     March 25, 2013
           Rochester, New York